UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUMMA RESOURCE HOLDINGS
LLC,

        Plaintiff,

    v.

CARBON ENERGY LIMITED,

        Defendant.

Case No. 15-cv-05334-TEH

**ORDER DISMISSING ACTION ON**
***FORUM NON CONVENIENS***
**GROUNDS**

      This matter is before the Court on Defendant's Motions to Dismiss and Strike, filed on December 18, 2015.  (Docket No. 16.)  On February 16, 2016, the Court requested supplemental briefing from the parties on the issues of choice of law and *forum non conveniens*.  (Docket No. 25.)  On April 18, 2016, the Court vacated the motion hearing and requested responses from the parties to the Court's questions.  (Docket No. 34.)  Having carefully considered the parties' written arguments, the Court finds this matter suitable for resolution without oral argument.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court hereby DISMISSES this action on the basis of *forum non conveniens*.

**BACKGROUND**

      This action arises out of a Share Sale Agreement (the "Agreement") between Defendant Carbon Energy, Ltd. ("Carbon"), an Australian corporation specializing in underground coal gasification (UCG) technology, and Plaintiff Summa Resource Holdings, LLC ("Summa"), a California hedge fund.  On February 23, 2011, in Brisbane, Queensland, the parties executed the Agreement, wherein Summa sold its interests in certain UCG projects to Carbon in exchange for Carbon common stock.  Compl. ¶¶ 18 (Docket No. 1); Agreement § 6.1, Ex. A to Compl.  Two of the Summa projects were located in the United States (in Wyoming and North Dakota/Montana), and one project was located in Turkey.  Compl. ¶ 21.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The terms of the Agreement provided that Carbon would pay Summa for the projects in five tranches of Carbon stock.  *Id.* ¶ 22.  The shares of Tranche 1 were to be issued to Summa without restrictions.  *Id.* ¶ 23.  The shares of Tranches 2 and 3 were to be issued with escrow instructions attached, which prevented Summa from liquidating the shares until the designated escrow period expired.  The shares of Tranches 4 and 5 were to be issued when Milestone Events 1 and 2, respectively, were achieved, or if the Milestone Events were "deemed achieved" due to Carbon's failure to use "Best Endeavours" or otherwise sufficiently develop the projects.  Agreement § 8, Ex. A to Compl.

On November 20, 2015, Summa filed the instant action asserting eight claims under theories of breach of contract and fraud.  Summa alleges that Carbon breached the Agreement because, after the Agreement was executed, Carbon failed to use Best Endeavours or otherwise perform its obligations under the Agreement, and therefore Milestone Events 1 and 2 were not achieved and Summa did not receive the shares of Tranches 4 and 5.  Summa further alleges that Carbon had made false representations to Summa's key representatives, Mr. Mooney and Mr. Swindell, outlined as follows:

> [Carbon stated that] Carbon would expend whatever capital and resources were necessary or required to diligently fund, develop, operate and maximize the value of [the Summa projects], that Carbon would use its best efforts and endeavours to assure the accomplishment of that result and that Carbon would ensure that Summa would not be harmed by agreeing to accept deferred issuances of Carbon stock rather than up front payment of cash as its consideration under the Agreement.

Compl. ¶ 29.

Summa alleges that Carbon in fact had no intention to develop the projects, issue the shares of Tranches 4 and 5, or otherwise deal fairly with Summa.  *Id.* ¶ 30.  On the contrary, Summa alleges, Carbon's purpose in entering into the Agreement with Summa was to gain a foothold in the United States and on the United States stock exchange.  *Id.* ¶ 32.  Summa further alleges that Carbon perpetrated fraud by issuing press releases and public statements regarding its business strategies "in an attempt to deceptively bolster its stock price and company valuation."  *Id.* ¶ 35.

1    On December 18, 2015, Carbon moved to dismiss Summa's Complaint, and to

2    strike the allegations in the Complaint sounding in securities fraud.  Docket No. 16.  The

3    parties timely briefed the motion, and completed two additional rounds of briefing in

4    response to questions from the Court.

5

6    **LEGAL STANDARD**

7    A dismissal pursuant to the doctrine of *forum non conveniens* is a "drastic exercise

8    of the court's inherent power" and one that is "an exceptional tool to be employed

9    sparingly."  *Carijano v. Occidental Petroleum*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing

10   *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).  "Although a defendant must

11   meet an almost impossible burden in order to deny a citizen access to the courts of this

12   country, the cases demonstrate that defendants frequently rise to the challenge."  *Contact*

13   *Lumber Co. v. P.T. Moges Shipping Co., Ltd.,* 918 F.2d 1446, 1449 (9th Cir. 1990) (citing

14   *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977)).  To

15   warrant dismissal based on *forum non conveniens*, the Court must make two

16   determinations: (1) that the alternative forum is adequate; and (2) that the balance of

17   private and public interest factors favors dismissal.  *Dole*, 303 F.3d at 1118.

18

19   **DISCUSSION**

20   **I.    CHOICE OF LAW**

21   "Before dismissing a case for *forum non conveniens*, a district court must first make

22   a choice of law determination."  *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1482 (9th Cir.

23   1987).  However, the preliminary choice of law determination is not dispositive of whether

24   the Court should dismiss the action.  *See Gemini Capital Group, Inc. v. Yap Fishing Corp.*,

25   150 F.3d 1088, 1092 (9th Cir.1998); *In re Disaster at Riyadh Airport,* 540 F. Supp. 1141,

26   1153 (D.D.C. 1982).  Rather, the preliminary inquiry into choice of law is only in order to

27   determine whether the parties have chosen to apply laws that mandate venue in a particular

28   court.  *See Gemini Capital*, 150 F.3d at 1092.  This action does not "involve[ ] a United

United States District Court
Northern District of California

3

States statute requiring venue in the United States;" thus, the choice of law analysis is not determinative, and is given much less deference in the inquiry.  *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1148 (9th Cir. 2001).

This action contains a claim for breach of contract (that the parties agree is governed by Queensland law due to the Agreement's choice of law provision), and several other fraud-based claims of which the governing law is in dispute.  The Agreement's choice of law provision states: "This document is governed by and construed under Queenslandlaw[*sic*]."  Agreement § 14.6(a), Ex. A to Compl.  Neither party claims that the choice of law provision mandates a particular venue; as a result, the fact that Queensland law may apply to some of the claims does not require any action on the part of the Court with regard to this preliminary choice of law determination.

The parties have supplied the Court with Queensland law applicable to the choice of law inquiry; therefore the Court must use Queensland law to determine the scope of the Agreement's choice of law clause.  *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 n.3 (2001) (scope of a contract's choice of law clause is determined by the law identified in the contract, unless otherwise specified).  The Court finds that by using the words "this document" in the choice of law provision (compared to "any legal action in relation to this document" in the forum selection clause), the parties intended for the choice of law provision to apply narrowly in scope.  Agreement §§ 14.6(a), (b).  This finding comports with Australian common law, which provides that the parties may "fix their own governing law for their contracts," and that the "intention of the parties is what determines the governing law."  *Mynott v. Barnard,* 62 CLR 68, 79 (1939).[1]

Therefore, the choice of law provision applies to the following causes of action, which arise directly from the document itself: Breach of Written Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Eighth Claim for Relief); Conversion

---

[1]      This case, decided by the High Court of Australia, may be found in its entirety at Exhibit 1 to the Declaration of Christine Morgan, filed with Summa's March 15 Brief. Docket No. 30-2.

United States District Court
Northern District of California

(Fifth Claim for Relief); and Breach of Fiduciary Duty and Constructive Fraud (Second Claim for Relief).  These causes of action will be governed by Queensland law.  The remaining causes of action sound in fraud, and thus arise from the parties' relationship, but not directly from the document itself.  Thus, California law, as the law of the forum state and the location of the alleged misrepresentations, will govern the following causes of action: Fraudulent Inducement to Enter into Contract (First Claim for Relief); Common Law Fraud and Deceit (Third Claim for Relief); Intentional Interference with Prospective Economic Advantage (Fourth Claim for Relief); Negligent Misrepresentation and Concealment (Sixth Claim for Relief); and Unfair Competition (Seventh Claim for Relief).

## II.  FORUM NON CONVENIENS

The Court next turns to whether the action should be dismissed pursuant to the doctrine of *forum non conveniens*.  The *forum non conveniens* analysis is a two part inquiry.  First, the Court determines whether an adequate alternative forum exists.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981).  Second, the Court balances private and public interest with the plaintiff's choice of forum.  *Dole*, 303 F.3d at 1118.

### A.  Queensland Is an Adequate Alternative Forum.

An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the forum offers a satisfactory remedy.  *Carijano*, 643 F.3d at 1225 (citing *Reyno*, 454 U.S at 254 n.22).  "A dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery, but an alternate forum offering a clearly unsatisfactory remedy is inadequate."  *Carijano*, 643 F.3d at 1225 (internal marks omitted).  Here, the parties do not dispute that Carbon is amenable to process in Queensland.  At issue is whether Queensland offers a satisfactory remedy.  All remedies sought in a complaint do not need to be available for a forum to provide a satisfactory remedy.  Rather, the bar is considered very low: a forum will only be found inadequate when the remedy is "so clearly inadequate or unsatisfactory, that it is no remedy at all."  *Lockman Found. v.*

United States District Court
Northern District of California

*Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991).

Queensland has a sophisticated court system based on Australian common law, which is similar to the American court system.  While there are three claims that would not be available to Summa in Queensland, the majority of Summa's causes of action are recognized by Queensland courts.[2]  Furthermore, the Court notes that by executing the Agreement, Summa consented to the Queensland forum by way of the Agreement's forum selection clause.  While this consideration is not dispositive as to the Court's *forum non conveniens* analysis, it certainly indicates that Queensland is an adequate alternative forum, because it was expressly contemplated by the parties.

Summa argues that Queensland cannot be considered an adequate forum unless Carbon agrees to waive any statute of limitations defenses that would be applicable in Queensland.  Summa Mar. 1 Brief at 6 (Docket No. 27).  However, Summa concedes that the Queensland statute of limitations has not yet expired on the majority of Summa's claims. Summa Apr. 22 Brief at 6 (Docket No. 36).  Therefore, it is not necessary to condition any *forum non conveniens* dismissal on Carbon waiving its statute of limitations defenses.  *Cf. Contact Lumber*, 918 F.2d at 1450.

**B.      The Public and Private Interest Factors Outweigh Summa's Choice of Forum and Favor Dismissal.**

**1.      <u>Summa's choice of forum merits slightly less weight than it would in a typical *forum non conveniens* analysis.</u>**

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."  *Reyno,* 454 U.S. at 255.  Therefore, the plaintiff's choice of forum is ordinarily only outweighed if it results in "oppressiveness and vexation ... out of all proportion" to the Plaintiff's convenience.  *Carijano*, 643 F.3d at

---

[2]      The three claims that would not be available to Summa in Queensland are: (1) Unfair Competition (Seventh Claim for Relief); (2) Negligent Misrepresentation (Sixth Claim for Relief); and (3) Intentional Interference with Prospective Economic Advantage (Fourth Claim for Relief).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   1227 (quoting *Reyno*, 454 U.S. at 241).

2       "[W]hile a U.S. citizen has no absolute right to sue in a U.S. court, great deference

3   is due plaintiffs because a showing of convenience by a party who has sued in his home

4   forum will usually outweigh the inconvenience the defendant may have shown." *Contact*

5   *Lumber*, 918 F.2d at 1449.  However, an individual's choice of forum is given greater

6   deference than that of a corporation which "can easily handle the difficulties of engaging

7   in litigation abroad." *Amirhour v. Marriott Int'l. Inc.*, No. 06-CV-1676-WHA, 2006 WL

8   3499241, at *5 (N.D. Cal. Dec. 4, 2006) (internal marks omitted).  Furthermore, the

9   existence of a forum selection clause "significantly undercuts any argument that the

10  preselected forum is inconvenient for the parties or witnesses." *AAMCO Transmissions,*

11  *Inc. v. Romano*, 42 F. Supp. 3d 700, 713 (E.D. Pa. 2014); *see also Atl. Marine Const. Co.,*

12  *Inc. v. U.S. Dist. Court for W. Dist. of Texas*, --- U.S. --- , 134 S.Ct. 568, 582 (2013).[3]

13      Here, Summa is a corporation participating in business ventures internationally, not

14  an individual of modest means.  Furthermore, Summa chose to do business with an

15  Australian corporation, chose to close the transaction in Queensland, and signed an

16  Agreement containing a forum selection clause which identified Queensland as a

17  permissible forum for disputes stemming from the transaction.  For these reasons, the

18  Court finds that Summa's choice of forum is afforded only slight weight in this Court's

19  *forum non conveniens* analysis.

20      **2.**    **The private interest factors weigh in favor of dismissal.**

21      The factors relating to the private interests of the litigants include: "(1) the

22  residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3)

23  access to physical evidence and other sources of proof; (4) whether unwilling witnesses

24  can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability

25  of the judgment; and (7) all other practical problems that make trial of a case easy,

26

27  [3]    The Court notes that the clause at issue in *Atlantic Marine* was a mandatory forum

28  selection clause and therefore the case is not on all fours.  However, the Supreme Court's
    reasoning in *Atlantic Marine* is helpful for this Court to determine the amount of weight to
    afford to Summa's choice of forum.

expeditious and inexpensive." *Carijano*, 643 F.3d at 1229 (citing *Boston Telecomms. Grp. v. Wood,* 588 F.3d 1201, 1206-07 (9th Cir. 2009); *Lueck*, 236 F.3d at 1145. As explained below, the Court finds that all of the private interest factors either favor dismissal or are neutral, and the most important factors – concerning witnesses – weigh in favor of dismissal. *See Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 17 (N.D. Cal. 1982) ("Perhaps the most important private interest factor is the relative availability of evidence and witnesses.").

### a. *The factors concerning witnesses favor dismissal.*

The Court first turns to the various private interest factors concerning witnesses: the residence of the witnesses, whether unwilling witnesses can be compelled to testify in either forum, and the cost of bringing witnesses to trial. Summa and Carbon each contend that a different forum is more convenient because each party focuses on different witnesses. The Court's focus must be on the quality, not quantity, of the witnesses. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (court should evaluate "the materiality and importance of the anticipated witnesses' testimony and then determine[ ] their accessibility and convenience to the forum"). The Court notes that it will not consider party witnesses in its analysis, including Mr. Mooney and Mr. Swindells, who are affiliated with Summa, and Dr. Garnett, Mr. Hogan, Mr. Rozman and Dr. Mallet, who are current members of the Carbon Board of Directors. Party witnesses may be compelled to testify regardless of the ultimate forum, and travel for those witnesses are a necessary expense of litigation.

Carbon contends that an important aspect of this action is based on alleged oral misrepresentations made by employees of Carbon prior to the execution of the Agreement. Carbon Mar. 1 Brief at 10 (Docket No. 26). The employees who allegedly made those statements reside in Queensland and are no longer affiliated with Carbon.[4] As stated by

---

[4] Carbon contends that Mr. Dash, Mr. Nitsch and Mr. Swaddle all reside in Queensland (or will reside in Queensland at the time of any trial in this action), and supports this contention with declarations. *See* Carbon Apr. 22 Brief at 4-6 (Docket No. 35).

Carbon, "[t]here is no reason to think that they would voluntarily travel to the United States to testify in a case in which they are accused of lying." *Id.* Furthermore, the Court must give sufficient weight to these witnesses because many of the fraud claims turn on the mental state of these three employees. *See Carijano*, 643 F.3d at 1230. Therefore, as Carbon points out, depositions would be an inadequate substitute for trial testimony, where the trier of fact could assess the credibility of the witnesses. Carbon Mar. 15 Brief at 7 (Docket No. 31). Carbon also contends that the key witnesses for the breach of contract claim would be the Carbon employees at the time the Agreement was in effect – many of whom are no longer affiliated with Carbon. *Id.* at 11.

The Court is persuaded by Carbon's arguments. The Court finds that while there are eight causes of action in the complaint, the most qualitatively important issues are (1) whether Carbon breached the Agreement; and (2) whether Carbon perpetrated fraud through oral misrepresentations. The majority of the claims rest on these two issues, and accordingly, the key witnesses would be Carbon employees at the time the parties negotiated and executed the Agreement, as well as during the time Carbon was obligated to develop the projects. The fact that these key witnesses reside in Australia and are no longer affiliated with Carbon means they cannot be compelled to testify in the United States, and therefore weighs in favor of dismissal. *See Contact Lumber*, 918 F.2d at 1451 (affirming *forum non conveniens* dismissal where key witnesses located in the Philippines were not employed by, or within the control of, the defendant).

Summa names as potential key witnesses Mr. Grimes and Mr. Merriman, who work at Merriman Capital, and reside in the Northern District of California. Summa Mar. 1 Brief at 9. Summa contends that Mr. Grimes and Mr. Merriman are key witnesses as to Carbon's "financing efforts in the United States and motivation and intent to use the Agreement as a vehicle to gain a foothold in the United States financial markets." *Id.* Summa also lists third parties who were the contracting parties on the two United States projects, who Summa believes reside in Texas. *Id.* at 10. Finally, Summa lists other third party witnesses who Summa believes met with Carbon as part of Carbon's due diligence,

United States District Court
Northern District of California

1   discussed UCG resources at the Summa projects, and assisted Carbon with project

2   identification. *Id.* at 10-11. The Court finds that these witnesses are not as important as

3   the witnesses named by Carbon, and notes that for these witnesses, depositions are a viable

4   option.

5         Finally, the Court considers the cost of bringing witnesses to trial. As discussed

6   above, the Court finds that the extra cost to Summa of flying two party witnesses (Mr.

7   Mooney and Mr. Swindells) is not probative, given that Summa elected to do business in

8   Queensland and consented to Queensland as a permissible forum at the very least. On the

9   contrary, Carbon's cost would be much greater to fly non-party witnesses who agree to

10  testify to California, as all of these witnesses reside in Australia.

11        For these reasons, the Court finds that the factors concerning witnesses weigh in

12  favor of dismissal. While there may be witnesses on either side that are unable to be

13  compelled to testify in either forum, the most important witnesses to the Agreement's

14  negotiation and execution, Carbon's contractual duties, and Carbon's alleged fraudulent

15  conduct are located in Australia. Witnesses whose credibility is directly at issue in the

16  fraud-based claims could not be compelled to testify in California, and depositions of those

17  witnesses are disfavored.

18               ***b.    Enforceability of judgment factor favors dismissal.***

19        Summa argues that the enforceability of the judgment factor is neutral because

20  "Queensland courts recognize United States judgments." Summa Mar. 1 Brief at 12.

21  However, Carbon asserts that the factor supports dismissal, because Carbon's principal

22  assets are in Australia. Carbon Mar. 1 Brief at 10 n.6. Furthermore, Carbon asserts that

23  the Foreign Judgments Act of 1991 "allows certain judgments to be registered for

24  enforcement in Australia, but applies only to judgments rendered by the courts of specified

25  countries," pursuant to a Schedule on which the United States is not listed. Carbon Mar.

26  15 Brief at 12. On the contrary, the parties are in agreement that Summa would be able to

27  collect judgment in Queensland. *See* Summa Apr. 22 Brief at 1; Carbon Apr. 22 Brief at 1.

28  Therefore, the Court finds it unnecessary to attach conditions to any *forum non conveniens*

dismissal.  Given the hurdles that Summa would face in attempting to enforce a judgment from this Court in Queensland over Australian assets and the lack of difficulty vice versa, the Court finds that this factor weighs in favor of dismissal.

### c.    *The remaining private interest factors are neutral.*

The two remaining private interest factors are neutral.  First, as corporations doing business internationally, neither party can credibly argue that it cannot travel to either forum; both parties participated in negotiations and execution of the Agreement in both the United States and Australia.  Because inconvenience would befall either party in either forum, the factor concerning the litigants' convenience is neutral.  Second, the Court is not convinced that actual inspections of the Summa projects' real property would be necessary, and if so, the cost of inspections would be great regardless of the forum, due to the Turkey project.  Furthermore, relevant documents are likely electronic and are therefore easily transferred between forums with modern technology, so any argument about documentary evidence is unavailing.  *Kellerman v. InterIsland Launch*, No. 14-CV-1878-RAJ, 2015 WL 6620604, at *5 (W.D. Wash. Oct. 30, 2015).  Therefore, the factor concerning evidence and sources of proof is neutral.

### 3.    The public interest factors weigh in favor of dismissal.

"Public interest factors encompass court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar."  *Contact Lumber*, 918 F.2d at 1452.  To evaluate the public interest factors, the Court must first "decide how the underlying issue ought to be conceptualized."  *Id.*  The public interest factors include: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries: (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.  *Lueck*, 236 F.3d at 1147 (citing *Reyno*, 454 U.S. at 259-61).  As explained below, the Court finds that one public interest factor favors retaining jurisdiction, one public interest factor favors dismissal, and the remaining factors are neutral.

///

11

### a.     Local interest of California favors retaining jurisdiction.

The local interest factor depends on how the issue is framed.  The Supreme Court has emphasized the principle that "there is a local interest in having localized controversies decided at home." *Reyno*, 454 U.S. at 260.  Summa argues that California has a strong local interest in protecting California-based corporations (such as Summa) against fraud. Summa Mar. 1 Brief at 13; *see, e.g., Dole*, 303 F.3d at 1119 (Netherlands' interest in controversy concerning Dutch warehouses was "secondary to California's interest in adjudicating claims for fraud . . . perpetrated against a company based in California"). Carbon contends that the essence of the dispute is the breach of contract claim, not the fraud claims.  Carbon Mar. 1 Brief at 14.  Carbon therefore argues that Queensland has a greater interest in the transaction because the Agreement chose Queensland as the place of the contract, and the closing occurred in Queensland.[5]  Carbon Mar. 15 Brief at 13-15; *see, e.g., Diatronics*, 649 F. Supp. at 129 ("Since the entire transaction took place in Israel . . . the community in Israel has a greater interest in the dispute.").

Here, the Court finds that while both California and Queensland have an interest in the action, California's interest (protecting citizens from fraud) surpasses the interest that Queensland has merely due to the location of the Agreement's closing.  For these reasons, the Court finds that this factor weighs slightly in favor of retaining jurisdiction.

### b.     Court congestion favors dismissal.

It is beyond dispute that the docket of this Court is heavily congested.  *See Kedkad*, 2013 WL 5945807, at *5.  As the Ninth Circuit has noted, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates*, 743 F.2d at 1337.  Carbon provides evidence of docket statistics in Queensland as compared to the Northern District of California.  Carbon Mar. 1 Brief at 15.  Most notably, Carbon provides statistics from the

---

[5]     This Court has recognized that a choice of law provision in a contract gives the foreign jurisdiction selected in the clause an interest in the matter.  *Kedkad v. Microsoft Corp.*, No. 13-CV-0141-TEH, 2013 WL 5945807, at *5 (N.D. Cal. 2013).

United States District Court
Northern District of California

most recent year showing that only 7.8% of active cases in the Brisbane court were pending for more than two years; compared to the 9.1% of civil cases in the Northern District of California that were pending for more than three years.  Carbon Mar. 1 Brief at 15.  Summa does not provide any argument in opposition to these statistics.  Because a Queensland court could adjudicate the instant case more quickly than a court in the Northern District of California, the Court finds that this factor weighs in favor of dismissal.

### c.    *The remaining public interest factors are neutral.*

The remaining public interest factors are neutral.  First, the parties do not address the factors concerning the costs of resolving disputes and the burden on local courts and juries, and the Court sees no argument as to why these factors would not be neutral.  Second, the similarities between Queensland American courts and the lack of translation problems neutralize the factor concerning application of governing law, as the Court does not anticipate that either court would have a problem applying the other jurisdiction's law.  *See Reyno*, 454 U.S. at 260 n.29 ("the need to apply foreign law . . . is not alone sufficient to warrant dismissal").

**CONCLUSION**

For the reasons stated above, the Court finds that Defendant has sufficiently demonstrated that permitting this action to proceed in the Northern District of California would be unnecessarily burdensome, and that the private and public interest factors outweigh Plaintiff's choice of forum.  Therefore, the Court hereby DISMISSES this action on the basis of *forum non conveniens*.  Accordingly, the Court need not reach the merits of Defendant's motion to dismiss and strike.

**IT IS SO ORDERED.**

Dated:  05/05/16

THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California

13